371 So.2d 239 (1978)
STATE of Louisiana
v.
Aubrey Joseph LECOMPTE.
No. 62117.
Supreme Court of Louisiana.
November 13, 1978.
On Rehearing May 21, 1979.
*240 Willis & Hardy, Paul J. deMahy, St. Martinville, for defendant-appellant.
William A. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., George W. McHugh, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged the defendant, Aubrey Joseph Lecompte, with four counts of attempted forcible rape, violations of LSA-R.S. 14:27 and 14:43.1. A jury returned guilty verdicts. The court sentenced him to five-year terms of imprisonment on each count, to run consecutively.
The defendant appeals, relying on eleven assignments of error for reversal of his convictions and sentences.
We adduce the following context facts:
While on Interstate-10, the defendant motioned to women driving alone that something was wrong with their right rear tires. Upon stopping, the defendant offered to tighten the lugs on the wheels but stated that he could only do it safely at the next exit. They left the Interstate at the Butte LaRose exit. In three instances, the defendant escorted the women to a nearby shell yard, and in the other instance, he followed the victim until she pulled off the exit road. After tightening the lugs, he attempted to forcibly rape each woman.
These offenses occurred over a two-month period.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
Prior to and during trial, the defendant filed motions to quash and sever the four counts of attempted forcible rape. The court denied them.
In challenging these rulings, the defendant asserts that the joinder prevented the jury from giving a fair determination of his guilt or innocence on each offense. He contends that trial on the four counts confused the jury because each count had a separate victim, time and date, because there was an alibi for three counts, and because the State presented the evidence in a different order than the counts appear in the Bill of Information. He supports this contention by pointing to the fact that the jury asked the court for the specific time each offense occurred.
When the State charges the defendant in the same Bill of Information with two or more offenses pursuant to Louisiana Code of Criminal Procedure Article 493, he may apply for a severance of offenses under Louisiana Code of Criminal Procedure Article 495.1, which provides:
"The court, on application of the prosecuting attorney, or on application of the defendant shall grant a severance of offenses whenever:
"(a) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
"(b) if during the trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The Court shall consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense."
In State v. Mitchell, La., 356 So.2d 974 (1978), we set forth the guidelines for severance, as follows:
"Two critical questions must be determined by the trial judge presented with a *241 motion for severance of offenses. First, he must decide `whether, in view of the number of offenses charged and the complexity of the evidence . . . offered, the trier of fact [could] distinguish the evidence and apply the law intelligently as to each offense.' La.Code Crim.P. art. 495.1; State v. Holstead, 354 So.2d 493 (La.1977); State v. Proctor, 354 So.2d 488 (La.1977). A second question to be decided is whether the offenses joined because they are of the `same or similar character' under La.Code Crim.P. art. 493 (as opposed to `same transaction' or `common plan' joinder) are admissible as similar acts under La.R.S. 15:445 and 446. State v. Holstead, supra; State v. Carter, 352 So.2d 607 (La.1977).
"In relation to the first question, in deciding whether the complexity of the evidence warrants severance of the offenses, an appellate court evaluating the trial judge's denial of defendant's motion will examine the case for various problems:
"Some of the dangers inherent in a multiple offense joinder situation are that the jury may become confused in trying to apply the applicable law and evidence to the correct offense; that the jury may consider that a person charged with doing so many things is a bad man who must have done something, a feeling that might lead to a cumulation of the evidence; that the judge might find it difficult to adequately charge a jury as to the law with respect to each offense; that the prosecutor may find it troublesome to present his evidence in a compartmentalized and understandable manner; and that a defendant may be confounded or embarrassed in his defense because of the sheer number or complexity of the charges against him.

"State v. Proctor, supra. Also cited in State v. Holstead, supra.

"* * *
"We next consider whether the offenses joined under La.Code Crim.P. art. 493 because they are of the `same or similar character' are admissible as similar acts under La.R.S. 15:445 and 446. State v. Holstead, supra; State v. Carter, supra. In order to be admissible under this exception, the other crimes must first be so distinctively similar as to preponderantly demonstrate that their perpetrator must be the same person. State v. Jackson, 352 So.2d 195 (La.1977); State v. Slayton, 338 So.2d 694 (La.1976); State v. Waddles, 336 So.2d 810 (La.1976). The proof of the other crimes must also be relevant to prove a fact of consequence to the accused's present innocence or guilt (independent of the inadmissible purpose to infer that the accused committed the present crime because he had committed the other one). State v. Jackson, supra; State v. Frederick, 340 So.2d 1353 (La. 1976). Finally, the probative value of the evidence of the other crime must outweigh its prejudicial effect. State v. Jackson, supra; State v. Ledet, 345 So.2d 474 (La.1977); State v. Moore, 278 So.2d 781 (La.1973) (on rehearing)." [Footnote deleted.]
This Court concludes that the trial judge properly denied the motions to quash and sever. Severance was neither appropriate nor necessary "to promote a fair determination of the defendant's guilt or innocence of each offense." LSA-C.Cr.P. Art. 495.1. Under the circumstances here, we think the jury could distinguish the evidence and apply the law intelligently as to each offense. Several factors bolster our conclusion: the relatively small number of offenses joined and the uncomplicated nature of the offenses did not handicap the defendant in his defense; each offense was for the same crime committed in the same manner; there was no confusion in the application of the law because the law was the same for each offense; the statutes violated have few elements; the State presented its evidence in a compartmentalized, logical, and understandable manner; the State's evidence consisted primarily of the victims' testimony which was simple and largely identical in nature; and the court's instructions clearly explained the jury's duty to determine the defendant's guilt or innocence *242 on each offense. Most importantly, the court gave the jurors a list of each charge, the victim, and the date of the offenses to aid in their deliberations.
The jury initially returned two verdicts of not guilty and two verdicts of guilty. One of the not guilty verdicts was improper because it was not the verdict of ten jurors. See LSA-C.Cr.P. Art. 782. The judge instructed them that ten must concur in each verdict and ordered them to deliberate further. Thereafter, they returned four guilty verdicts. The fact that the jurors initially rendered different verdicts for each count indicates that they separated the evidence and law for each count.
And finally, because the jurors asked for the specific times on each offense, does not indicate that the joinder of offenses confused them. The times were critical for evaluation of the alibis.
Secondly, we find these joined offenses which are of the "same or similar character" admissible as similar acts under LSA-R.S. 15:445 and 446. In the instant case, the forcible rapes occurred over a two-month period and exhibited almost identical modus operandi. The modus operandi is so distinctive that it supports a finding that the crimes were the action of the same person, i.e., they are "signature crimes."
Evidence of other crimes is relevant to prove a fact of consequence of the defendant's innocence or guilt. He placed his identity at issue when he presented alibis to three of the charges. The identification of the defendant as the assailant in the offense in which the defense failed to offer an alibi strengthens the identifications in the other three rape charges. In addition, the defense contested the specific intent. He unsuccessfully attempted to introduce expert evidence to prove that he did not have the specific intent to commit any crime and he testified that he did not intend to rape one of the victims. The fact that the defendant inserted his finger into one of the victims vagina strengthens the proof of the defendant's specific intent to forcibly rape the other three victims. Hence, the evidence of the other offenses was relevant to his identity and intent.
Lastly, the probative value of the evidence of each attempted forcible rape, relating to the proof of identity and intent, clearly outweighs its prejudicial effect.
In conclusion, we hold that the trial court properly denied the motions to quash and sever.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 4, 5, 6, AND 7
The defense alleges that there is no evidence that the victims were prevented from resisting his acts by force or threats of physical violence wherein the victims reasonably believed such resistance would be useless, and that there is no evidence of his specific intent to engage in sexual intercourse without the lawful consent of the victims.
In criminal matters, our appellate jurisdiction extends to questions of law. La.Const. Art. 5, § 5 (1974). Only when defendant has moved for a new trial, or a directed verdict in a bench trial, based on the allegation that there is no evidence of the crime charged is a question of law presented which this Court can review. State v. Alexander, La., 339 So.2d 818 (1976); State v. Jack, La., 332 So.2d 464 (1976); State v. Jones, La., 303 So.2d 486 (1974). Here the defendant failed to make any such motion. At sentencing held seven days after conviction, counsel moved only for a continuance in order that he have additional time to file a motion for a new trial. The court denied it, and the defendant does not challenge that ruling.
Assuming arguendo that we have jurisdiction to treat these contentions, we find that there was some evidence of each element of the crimes. The four victims' testimony alone constituted evidence of the defendant's force and his specific intent. Moreover, although "intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." LSA-R.S. 15:445.
*243 These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 8
The court qualified defense witness Dr. Lillian Robinson as a medical expert in the field of psychiatry and psychoanalysis. She testified as to the defendant's mental history. When she stated that he had a "dissociative reaction" to the sudden death of his first wife and the rearing of his three children, the court interrupted and removed the jury. The following occurred:
"BY THE COURT: The State has [previously] raised an objection to the testimony of the psychiatric witness on the grounds that the defendant has entered a plea of not guilty to the crime and not a plea of not guilty and not guilty by reason of insanity. What is the purpose of your testimony, [defense counsel]?
"[DEFENSE COUNSEL]: If Your Honor please, I did not anticipate the State's objection on this.
"BY THE COURT: But you should have.
"[DEFENSE COUNSEL]: We did not enter a plea of not guilty and not guilty by reason of insanity for a very special reason. He's not insane.
"* * *
"[DEFENSE COUNSEL]: We entered a plea of not guilty. Now he is charged with the attempt to commit a forcible rape. The article which defines attempt requires a specific intent. The purpose of the doctor's testimony is to show that he did not have a specific intent to commit the crime." Tr. pp. 249-250.
Louisiana Code of Criminal Procedure Article 651 provides in pertinent part:
"When a defendant is tried upon a plea of `not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible."
Under this statute, evidence of a mental condition or defect is inadmissible when the defendant failed to plead not guilty and not guilty by reason of insanity. Moreover, a mental defect or disorder short of insanity cannot serve to negate specific intent and reduce the degree of the crime. State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966) and the cases cited therein. See also LSA-R.S. 14:14; LSA-C.Cr.P. Art. 651, Official Revision Comment (a); State v. Berry, La., 324 So.2d 822 (1975). In State v. Jones, La., 359 So.2d 95 (1978), we upheld a trial court's ruling which precluded counsel from arguing that defendant's "neurotic, prone-to-hysteria mental condition precluded the specific intent required for murder. . ." where defense had withdrawn her plea of not guilty by reason of insanity.
Initially, we note that specific intent is an ultimate legal conclusion to be resolved by the fact finders. Because an "expert witness must state the facts upon which his opinion is based," we can reasonably deduce that the testimony of an expert in psychiatry and psychoanalysis concerning the defendant's lack of specific intent would necessarily include testimony of a mental defect or condition. See LSA-R.S. 15:465. Stated another way, in order for the physician to testify as to the effect, no specific intent, she would testify as to the cause, mental condition. This is true even when he asserts (for the first time in brief) that the testimony would prove the absence of specific intent as a defense as distinguished from the inability to form specific intent.
We hold, therefore, that Louisiana Code of Criminal Procedure Article 651 precludes admission of an expert's testimony concerning the absence of specific intent when the defendant's plea is not guilty.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 11
The defendant challenges the victims' in-court identifications on the basis that he participated in a line-up without his attorney present despite the fact that he had an attorney.
Louisiana Code of Criminal Procedure Article 841 prevents us from treating this issue for the defendant failed to object to *244 any of the victims' identifications. Moreover, the record is void of direct evidence concerning the line-up. For example, it fails to reflect the date of the line-up in order that we may decide if the defendant had a right to an attorney. See Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).
This assignment of error is without merit.
We have examined the remaining assignments of error and find them to be insubstantial.
For the reasons assigned, the convictions and sentences are affirmed.
DIXON, J., dissents. We cannot constitutionally prohibit introduction of evidence tending to disprove essential intent.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents, disagreeing with the opinion as to the exclusion of evidence relating to intent.
CALOGERO, Justice, dissenting.
The defendant in the instant case simply entered a plea of not guilty, declining to enter the dual plea (of not guilty and not guilty by reason of insanity) presumably because he did not wish to claim exemption from criminal responsibility on the basis of inability to distinguish right from wrong. Only that demonstrated inability, not diminished responsibility or irresistible impulse, will exempt an offender from criminal responsibility. R.S. 14:14; See State v. Jones, 359 So.2d 95 (La.1978) and State v. Daigle, 344 So.2d 1380 (La.1977). Entry of the dual plea may be viewed as tactically undesirable, since it apprises the jury from the beginning that the defendant alternatively admits the act, but seeks to be excused from the criminal consequences of the act by virtue of his mental condition. See State v. Clark, 305 So.2d 457 (La.1975). A criminal defendant should not be required to enter the dual plea which so disadvantages him, where he makes no claim that he knew not right from wrong, simply to avail himself of the right to disprove an essential element of the crime with which he is charged.
In State v. Willie, 360 So.2d 813 (La.1978) we discussed the United States Supreme Court's decision in Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), which approved a statute requiring a defendant to prove the affirmative defense of "extreme emotional distress", finding that it comported with due process because the defense did not serve to negative any essential elements of the offense. We recognized that if insanity is an affirmative defense (as "M'Naghten" insanity is under Louisiana law), the state may require the defendant to establish that defense, but could not require a defendant to prove insanity if sanity is an element of the offense, without offending due process. In the instant case the State sought to establish the requisite specific intent by presenting evidence of facts and circumstances from which the jury might infer such intent. R.S. 15:445. In his attempt to present the psychiatrist's testimony to show that defendant did not have a specific intent to commit forcible rape, the defense merely sought to disprove an element of the crime, not prove a defense, such as (M'Naghten) insanity or intoxication. See Hughes v. Matthews, 576 F.2d 1250 (7th Cir. 1978), wherein evidence of diminished capacity as a defense is distinguished from such evidence tendered to disprove an essential element of the crime, the burden of proof of which indisputably falls to the state.
Our statutory prohibition against introduction of evidence of mental defect in cases where the defendant's plea is "not guilty" violates a defendant's due process right to present evidence.
For the foregoing reasons, I respectfully dissent.

On Rehearing
BLANCHE, Justice.
Chief Justice Sanders retired after decision was rendered herein and before the matter was presented to the Court on rehearing. After a rehearing was granted, *245 this writer became a member of the Court and the matter is now submitted to me by an evenly divided Court for decision.
I concur with the opinion as written by Chief Justice Sanders for the majority and take the liberty of expressing these thoughts.
Louisiana has adopted the "M'Naughten rule," which sets forth the test by which a person can be exonerated from the responsibility of his criminal acts because of a mental deficiency or illness which prevents him from distinguishing between right and wrong. The codification of that rule is found in LSA-R.S. 14:14, and in finding that the rule was not constitutionally offensive, Justice Tate in State v. Berry, 324 So.2d 822 (La.1976), stated:
"Our legislature has by La.R.S. 14:14 expressly adopted the M'Naughten test of insanity. We are cited to no authority by reason of which such adoption is beyond its power or offends constitutional guarantees. Whether wise or unwise, this legislative choice does not admit of judicial substitution of another test allegedly more scientifically based on modern psychiatric knowledge." (State v. Berry, 324 So.2d at 825)
Also, as noted in the Court's original opinion, evidence of a mental condition or defect short of insanity cannot serve to negate a specific intent and reduce the degree of the crime. See State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966).
In that case the defense attempted to have the Court accept the theory that a defendant could have a mental disease or mental defect that would not constitute legal insanity but the defendant's mental condition was such that it prevented him from forming the specific criminal intent to kill or inflict great bodily harm. In rejecting this theory, the Court first cited LSA-R.S. 14:14 and then stated:
"Under this article, a mental defect or disorder short of insanity as thus defined cannot serve to negate specific intent and reduce the degree of the crime. See Fisher v. United States, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382; Fox v. State, 73 Nev. 241, 316 P.2d 924; Commonwealth v. Woodhouse, 401 Pa. 242, 164 A.2d 98; and 22 La.L.Rev. 664. We are aware, of course, that the so-called `partial insanity' doctrine has been adopted in several states. See, e.g., State v. Padilla, 66 N.M. 289, 347 P.2d 312, 78 A.L.R.2d 908. However, we are bound by the codal provision, exempting one from criminal responsibility only if he is capable of distinguishing right from wrong." (State v. Rideau, 193 So.2d at 271)
Accordingly, by offering evidence of mental illness as vitiating intent as an essential element of the crime, the defendant attempts to come through the back door to prove lack of mental responsibility to commit the offense charged. The real danger in permitting psychiatric evidence of mental or emotional disorders short of insanity to negate intent is to practically destroy the M'Naughten rule and to clutter practically every trial with some sort of expert opinion evidence as to whether the defendant possessed the requisite intent to commit the crime charged.
As intent is an ultimate legal conclusion based on hard evidence produced at trial, it strikes this writer that there is no violation of due process in leaving this finding to the jury unaided by the advice of others.
I concur that the objection was properly sustained by the trial court.

DECREE
Accordingly, on rehearing the convictions and sentences are affirmed.
AFFIRMED.
TATE, J., concurs and assigns reasons.
CALOGERO, J., dissents for reasons assigned in his dissent on original hearing.
DENNIS, J., dissents and assigns reasons.
DIXON, J., dissented.
TATE, Justice, concurring.
We granted a rehearing primarily to decide whether the doctrine of diminished responsibility *246 should apply in Louisiana, as it does in all but eleven other American states with similar concepts of specific intent and criminal insanity. See State v. Jones, 359 So.2d 95 (La.1978).
In the instant case, the defendant was charged with four counts of attempted forcible rape, a crime requiring specific intent to force the ultimate sexual act upon the victim. Short of that specific intent, the accused may be guilty of battery or of various other crimes, but not of attempted rape. The accused attempted to introduce psychiatric testimony to corroborate his defense that, due to a mental disease or defect, he had no inclination or desire to have sexual intercourse with the victims whom he molested.
In none of the four instances did the defendant attempt to open or remove his trousers. In three of the instances he kissed and fondled the victims and released them, without any attempt at sexual intercourse. In the fourth incident, he had kissed the girl and carried her from her car, but the deputies stopped him before he could manifest further intent.
As we noted in Jones, in the vast majority of American jurisdictions which have adopted the doctrine of diminished responsibility, evidence of a mental condition (although short of legal insanity) is relevant and admissible for the limited purpose of proving that a defendant did not have the requisite specific intent to commit the crime charged. Unlike legal insanity such evidence is not a defense against criminal guilt; it is rather relevant to negate the specific intent and reduce the degree of the crime. This is particularly appropriate in specific-intent crimes, such as murder, where responsive verdicts permit the conduct to be punished by a responsive verdict of guilt of a lesser crime which does not require specific intent.
The writer confesses that he is troubled by the forcefulness of the dissenting views that our court-created rule of evidence, which exclude all evidence of the accused's mental disease or defecthowever relevant, in fact, it is to whether he had the specific intent required by law to commit the crime, arbitrarily deprives him of relevant testimony which might mitigate his degree of criminal guilt, thus unconstitutionally relieving the state of its constitutional burden to prove guilt of every element of the crime beyond a reasonable doubt.
Nor do I find to be intellectually satisfying, however forcefully practical, the easy answers that first come to mind: we have never historically considered this type of evidence relevant (although nearly forty other states do); it would unnecessarily complicate trials in clear cases of guilt through the introduction of frivolous defenses based upon the vagaries of psychiatric diagnoses.
I am of the view that we should reconsider our stubborn adherence to our past rule that, in a trial on the merits, evidence of mental disease or disability is not admissible (however relevant to specific intent), except in a connection with a plea of legal insanity (i.e., the ability to distinguish between right and wrong).
Nevertheless, a majority being unwilling to do so at this time, I will concur under the facts of this particular case in the denial of admissibility to the psychiatric testimony here sought to be introduced, where the effect of the defense, if accepted, is that the accused is not guilty of the crime charged or of any responsive verdictwhereas only legal insanity (not the thrust of this psychiatric testimony) will under our law exempt the accused of criminal responsibility, if (pretermitting the accused's subjective inclinations of a psychiatric nature) from the objective facts introduced in evidence the jury may reasonably find that the accused (if not legally insane) intended to rape the victims.
DENNIS, Justice, dissenting.
The rebuttable presumption that the defendant intended the natural and probable consequences of his act, La.R.S. 15:432, coupled with the exclusion of all the psychiatric evidence offered to show his lack of capacity *247 to form the intent necessary for the offense of attempted forcible rape, in my opinion, unconstitutionally relieved the prosecution of its obligation of proving every essential element of the charged crimes. See, Hughes v. Mathews, 576 F.2d 1250 (7th Cir. 1978); cf. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).